ALESSI ET AL. *v.* RAYBESTOS-MANHATTAN, INC., ET AL.

No 79–1943.  Argued March 4, 1981—Decided May 18, 1981*

---

*Together with No. 80–193, *Buczynski et al.* v. *General Motors Corp. et al.*, on certiorari to the same court.

MARSHALL, J., delivered the opinion of the Court, in which all other Members joined, except BRENNAN, J., who took no part in the decision of the cases.

*Theodore Sachs* argued the cause for appellants in No. 79–1943. With him on the briefs were *Michael S. Scarola* and *I. Mark Steckloff*. *Marc C. Gettis* argued the cause and filed briefs for petitioners in No. 80–193.

*Warren John Casey* argued the cause for appellees in No. 79–1943. With him on the brief was *Sebastian J. Fortunato*. *Laurence Reich* argued the cause for respondent in No. 80–193. With him on the brief were *Otis M. Smith, Eugene L. Hartwig,* and *David M. Davis*. *John J. Degan,* Attorney General, *Stephen Skillman,* Assistant Attorney General, and *Michael S. Bokar,* Deputy Attorney General, filed a brief for the State of New Jersey as appellee in No. 79–1943, under this Court's Rule 10.4, and as respondent in No. 80–193, under this Court's Rule 19.6.†

---

†Briefs of *amici curiae* urging reversal were filed by *Alfred Miller* for the American Association of Retired Persons et al.; by *Gill Deford* and *Neal S. Dudovitz* for the Gray Panthers; and by *Leonard S. Zubrensky* and *Theodore Sachs* for Merl D. Stong et al.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General McCree,* Acting Assistant Attorney General *Murray, Stuart A. Smith, William A. Friedlander,* and *Michael J. Roach,* for the United States; by *Richard T. Wentley* and *Patrick W. Ritchey* for Allegheny-Ludlum Industries, Inc.; by *Stanley T. Kaleczyc* for the Chamber of Commerce of the United States; by *George J. Pantos* for the ERISA Industry Committee; and by *Charles R. Volk* and *William W. Scott, Jr.,* for the National Steel Corp.

Justice Marshall delivered the opinion of the Court.

Some private pension plans reduce a retiree's pension benefits by the amount of workers' compensation awards received subsequent to retirement. In these cases we consider whether two such offset provisions are lawful under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.* (1976 ed. and Supp. III), and whether they may be prohibited by state law.

# I

Raybestos-Manhattan, Inc., and General Motors Corp. maintain employee pension plans that are subject to federal regulation under ERISA. Both plans provide that an employee's retirement benefits shall be reduced, or offset, by an amount equal to workers' compensation awards for which the individual is eligible.[1] In 1977, the New Jersey Legislature

---

[1] The Raybestos-Manhattan, Inc., plan provides:

"All Retirement Income payments shall be reduced by the entire amount of any and all payments the Member is eligible to receive under any and all statutes pertaining to workmen's ·compensation, occupational disease, unemployment compensation, cash sickness benefits, and similar laws, other than primary Social Security benefits, Presently in effect or which may be enacted from time to time, which payments are paid concurrently with the Retirement Income."

The offset clause under the General Motors Corp. plan provides:

"In determining the monthly benefits payable under this Plan, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workmen's Compensation (including compromise or redemption settlements) payable to such employee by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workmen's Compensation has been provided by premiums, taxes or other payments paid by or at the expense of the Corporation, except that no deduction shall be made for the following:

"(a) Workmen's Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of

amended its Workers' Compensation Act to expressly prohibit such offsets. The amendment states that "[t]he right of compensation granted by this chapter may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments." N. J. Stat. Ann. § 34:15–29 (West Supp. 1980–1981) (as amended by 1977 N. J. Laws, ch. 156).

Alleging violations of this provision of state law, two suits were initiated in New Jersey state court. The plaintiffs in both suits were retired employees who had obtained workers' compensation awards subject to offsets against their retirement benefits under their pension plans.[2] The defendant companies independently removed the suits to the United States District Court for the District of New Jersey. There, both District Court Judges ruled that the pension offset provisions were invalid under New Jersey law, and concluded that Congress had not intended ERISA to pre-empt state laws of this sort. The District Court Judges also held that the offsets were prohibited by § 203 (a) of ERISA, 29 U. S. C. § 1053 (a). This section prohibits forfeitures of vested pension rights except under four specific conditions inapplicable to these cases.[3] The judges concluded that offsets based on workers' compensation awards would be forbidden forfeitures,

---

any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.

"(b) Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.

"(c) Workmen's Compensation payments paid under a claim filed not later than two years after the breaking of seniority."

[2] In No. 79–1943, former employees of Raybestos-Manhattan, Inc., sought permanently to enjoin such offsets and to recover damages for the offsets already made. Similar relief was pursued in No. 80–193, where several former employees of General Motors Corp. brought suit for themselves and on behalf of others similarly situated.

[3] See n. 8, *infra*.

and struck down a contrary federal Treasury Regulation authorizing such offsets.[4]

The United States Court of Appeals for the Third Circuit consolidated the appeals from these two decisions and reversed. 616 F. 2d 1238 (1980). It rejected the District Court Judges' view that the offset provisions caused a forfeiture of vested pension rights forbidden by § 1053. Instead, the Court of Appeals reasoned, such offsets merely reduce pension benefits in a fashion expressly approved by ERISA for employees receiving Social Security benefits. Accordingly, the Court of Appeals found no conflict between ERISA and the Treasury Regulation approving reductions based on workers' compensation awards and ERISA. Finally, the court concluded that the New Jersey statute forbidding offsets of pension benefits by the amount of workers' compensation awards could not withstand ERISA's general pre-emption provision, 29 U. S. C. § 1144 (a). We noted probable jurisdiction of the appeal taken by the former employees of Raybestos-Manhattan, Inc., and granted certiorari on the petition of former employees of General Motors Corp. 449 U. S. 949 and 950 (1980). For convenience, we refer to the former employees in both cases as retirees. We affirm the judgment of the Court of Appeals.

## II

Retirees claim that the workers' compensation offset provisions of their pension plans contravene ERISA's nonforfeiture provisions and that the Treasury Regulation to the contrary is inconsistent with the Act. Both claims require examination of the relevant sections of ERISA.

---

[4] The Regulation provides that "nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits." 26 CFR § 1.411 (a)–4 (a) (1980).

## A

As we recently observed, ERISA is a "comprehensive and reticulated statute," which Congress adopted after careful study of private retirement pension plans. *Nachman Corp.* v. *Pension Benefit Guaranty Corp.*, 446 U. S. 359, 361 (1980). In *Nachman*, we observed that Congress through ERISA wanted to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit— . . . he actually receives it." *Id.*, at 375.[5] For this reason, the concepts of vested rights and nonforfeitable rights are critical to the ERISA scheme. See *id.*, at 370, 378. ERISA prescribes vesting and accrual schedules, assuring that employees obtain rights to at least portions of their normal pension benefits even if they leave their positions prior to retirement.[6] Most critically, ERISA establishes that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable

---

[5] In its statement of findings and declaration of policy, Congress noted that "despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans." 29 U. S. C. § 1001 (a). ERISA was designed to prescribe minimum vesting and accrual standards in response to such problems. *Ibid.* To ensure that employee pension expectations are not defeated, the Act establishes minimum rules for employee participation, §§ 1051–1061; funding standards to increase solvency of pension plans, §§ 1081–1085; fiduciary standards for plan managers, §§ 1101–1114; and an insurance program in case of plan termination, §§ 1341–1348 (1976 ed. and Supp. III).

[6] ERISA establishes three accrual techniques for pension plans covered by the Act. 29 U. S. C. § 1054 (b) (1). See n. 9, *infra*. Similarly, ERISA establishes several approved vesting schedules. Under any of the approved schedules, at a time prior to normal retirement age but after a given period of service or a combination of age and length of service, the employee is to be guaranteed 100% interest in the pension benefit. 29 U. S. C. § 1053 (a) (2). See n. 10, *infra*.

upon the attainment of normal retirement age." 29 U. S. C. § 1053 (a).[7]

Retirees rely on this sweeping assurance that pension rights become nonforfeitable in claiming that offsetting those benefits with workers' compensation awards violates ERISA. Retirees argue first that no vested benefits may be forfeited except as expressly provided in § 1053. Second, retirees assert that offsets based on workers' compensation fall into none of those express exceptions. Both claims are correct; § 1053 (a) prohibits forfeitures of vested rights except as expressly provided in § 1053 (a)(3), and the challenged workers' compensation offsets are not among those permitted in that section.[8]

Despite this facial accuracy, retirees' argument overlooks a threshold issue: what defines the content of the benefit that, once vested, cannot be forfeited? ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA. ERISA defines a "nonforfeitable" pension benefit or right as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."

---

[7] ERISA defines "normal retirement benefit" as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U. S. C. § 1002 (22).

[8] The statute expressly exempts from its forfeiture ban offsets that: (1) are contingent on the employee's death, 29 U. S. C. § 1053 (a)(3)(A); (2) occur when the employee takes a job under certain circumstances, § 1053 (a)(3)(B); (3) are due to certain retroactive amendments to a pension plan, § 1053 (a)(3)(C); or (4) result from withdrawals of benefits derived from mandatory contributions, § 1053 (a)(3)(D). Retirees correctly point out that workers' compensation offsets fall into none of these categories.

29 U. S. C. § 1002 (19). In construing this definition last Term, we observed:

> "[T]he term 'forfeiture' normally connotes a total loss in consequence of some event rather than a limit on the value of a person's rights. Each of the examples of a plan provision that is expressly described as not causing a forfeiture listed in [§ 1053 (a)(3)] describes an event—such as death or temporary re-employment—that might otherwise be construed as causing a forfeiture of the entire benefit. It is therefore surely consistent with the statutory definition of "nonforfeitable" to view it as describing the quality of the participant's right to a pension rather than a limit on the amount he may collect." *Nachman Corp.* v. *Pension Benefit Guaranty Corp.*, 446 U. S., at 372–373.

Similarly, the statutory definition of "nonforfeitable" assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit. As we explained last Term, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" *Id.*, at 371.

Rather than imposing mandatory pension levels or methods for calculating benefits, Congress in ERISA set outer bounds on permissible accrual practices, 29 U. S. C. § 1054 (b)(1), and specified three alternative schedules for the vesting of pension rights, 29 U. S. C. § 1053 (a)(2). In so doing, Congress limited the variation permitted in accrual rates applicable across the entire period of an employee's participation in the pension plan.[9] And Congress disapproved

---

[9] The three different accrual practices approved for defined benefits plans are described in 29 U. S. C. § 1054 (b)(1). One prescribes a minimum percentage of the total retirement benefit that must be accrued in any given year. § 1054 (b)(1)(A). Another permits the use of any accrual formula as long as the accrual rate for a given year of service

pension practices unduly delaying an employee's acquisition of a right to enforce payment of the portion of benefits already accrued, without further employment.[10]  These provisions together assure at minimum a legally enforceable claim to 100% of the pension benefits created by a covered plan for those employees who have completed 15 years of service and for those employees aged 45 or older who have completed 10 years of service.[11]  Other than these restrictions, ERISA permits the total benefit levels and formulas for determining their accrual before completion of 15 years of service to vary

---

does not vary beyond a specified percentage from the accrual rate of any other year under the plan.  § 1054 (b) (1) (B).  The third is essentially a pro rata rule under which in any given year, the employee's accrued benefit is proportionate to the number of years of service as compared with the number of total years of service appropriate to the normal retirement age.  § 1054 (b) (1) (C).

[10] Congress approved some delay in an employee's acquisition of a vested right to portions of his pension derived from employer contributions.  Thus, ERISA specifies that this right could be hinged on a minimum length of service, but an employee reaching the minimum should not lose that right even if he does not continue working for that particular employer until reaching retirement age.  That minimum period of service can be calculated under three different formulas, two of which permit gradual vesting of percentages of the accrued benefits over time. Compare 29 U. S. C. § 1053 (a) (2) (A) with §§ 1053 (a) (2) (B), (C). See also Schiller, Proposed ERISA Vesting Regulations: Not What They Seem To Be, 6 J. Corp. L. 263 (1981) (discussing Internal Revenue Service implementation of vesting provisions).  In essence, pension plans qualifying for tax treatment advantageous to the employer both must ensure nonforfeiture of all accrued benefits derived from employee contributions and must use vesting and accrual rates assuring portions of the benefits derived from the employer contributions should the employee leave the job before the normal retirement age.  29 U. S. C. §§ 1053 (a) (1), (2).

[11] This minimum results from the formulas approving gradual vesting over time of benefits derived from employer contributions.  See 29 U. S. C. §§ 1053 (a) (2) (B), (C).  Alternatively, a plan may comply with ERISA "if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions."  29 U. S. C. § 1053 (a) (2) (A).

from plan to plan. See 29 U. S. C. §§ 1002 (22), (23) (benefits defined merely as those "under the plan").

It is particularly pertinent for our purposes that Congress did not prohibit "integration," a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees. Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all the retired employees, even if the nonpension funds are available only to a subgroup of the employees. The pension funds are thus integrated with the funds from other income maintenance programs, such as Social Security, and the pension benefit level is determined on the basis of the entire pool of funds. Under this practice, an individual employee's eligibility for Social Security would advantage all participants in his private pension plan, for the addition of his anticipated Social Security payments to the total benefit pool would permit a higher average pension payout for each participant. The employees as a group profit from that higher pension level, although an individual employee may reach that level by a combination of payments from the pension fund and payments from the other income maintenance source. In addition, integration allows the employer to attain the selected pension level by drawing on the other resources, which, like Social Security, also depend on employer contributions.

Following its extensive study of private pension plans before the adoption of ERISA, Congress expressly preserved the option of pension fund integration with benefits available under both the Social Security Act, 42 U. S. C. § 401 *et seq.* (1976 ed. and Supp. III), and the Railroad Retirement Act of 1974, 45 U. S. C. § 231 *et seq.* (1976 ed. and Supp. III); 29 U. S. C. §§ 1054 (b)(1)(B)(iv), 1054 (b)(1)(C), 1054 (b)(1)(G). Congress was well aware that pooling of nonpension retirement benefits and pension funds would limit

the total income maintenance payments received by individual employees and reduce the cost of pension plans to employers. Indeed, in considering this integration option, the House Ways and Means Committee expressly acknowledged the tension between the primary goal of benefiting employees and the subsidiary goal of containing pension costs. The Committee Report noted that the proposed bill would

> "not affect the ability of plans to use the integration procedures to reduce the benefits that they pay to individuals who are currently covered when social security benefits are liberalized. Your committee, however, believes that such practices raise important issues. On the one hand, the objective of the Congress in increasing social security benefits might be considered to be frustrated to the extent that individuals with low and moderate incomes have their private retirement benefits reduced as a result of the integration procedures. On the other hand, your committee is very much aware that many present plans are fully or partly integrated and that elimination of the integration procedures could substantially increase the cost of financing private plans. Employees, as a whole, might be injured rather than aided if such cost increases resulted in slowing down the growth or perhaps even eliminat[ing] private retirement plans." H. R. Rep. No. 93–807, p. 69 (1974), reprinted in 2 Legislative History of the Employee Retirement Income Security Act of 1974 (Committee Print compiled for the Senate Committee on Labor and Public Welfare) 3189 (1976) (Leg. Hist.).[12]

---

[12] The vesting, nonforfeiture, and pension benefits provisions of the bill discussed in H. R. Rep. No. 93–807 were substantially identical to those portions in the bill ultimately enacted as ERISA. The bill reported out of the Conference Committee included an additional provision to restrict temporarily any increases in pension reductions due to increases in Social Security benefits occurring after December 31, 1971. H. R. Conf. Rep. No. 93–

The Committee called for further study of the problem and recommended that Congress impose a restriction on integration of pension benefits with Social Security and Railroad Retirement payments. Congress adopted this recommendation and forbade any reductions in pension payments based on increases in Social Security or Railroad Retirement benefits authorized after ERISA took effect. 29 U. S. C. § 1056 (b). See 29 U. S. C. §§ 1054 (b)(1)(B)(iv), 1054 (b)(1)(C); H. R. Rep. No. 93–807, at 69, 2 Leg. Hist. 3189. See also 26 U. S. C. § 401 (a)(15).

In setting this limitation on integration with Social Security and Railroad Retirement benefits, Congress acknowledged and accepted the practice, rather than prohibiting it. Moreover, in permitting integration at least with these federal benefits, Congress did not find it necessary to add an exemption for this purpose to its stringent nonforfeiture protections in 29 U. S. C. § 1053 (a). Under these circumstances, we are unpersuaded by retirees' claim that the nonforfeiture provisions by their own force prohibit any offset of pension benefits by workers' compensation awards. Such offsets work much like the integration of pension benefits with Social Security or Railroad Retirement payments. The individual employee remains entitled to the established pension level, but the payments received from the pension fund are reduced by the amount received through workers' compensation. The nonforfeiture provision of § 1053 (a) has no more applicability to this kind of integration than it does to

1280, p. 131 (1974), 3 Leg. Hist. 4405. Senator Harrison Williams explained that this provision ultimately was deleted because:

"We have been told that this will greatly increase the costs of private pension plans, something that I am sure none of the Senators would like to see occur. This is particularly true if these increased pension costs result in the termination of private pension plans. Certainly that is not the intent of this legislation which is designed to improve and encourage the expansion of private pension plans." 120 Cong. Rec. 29928 (1974), 3 Leg. Hist. 4732.

the analogous reduction permitted for Social Security or Railroad Retirement payments. Indeed, the same congressional purpose—promoting a system of private pensions by giving employers avenues for cutting the cost of their pension obligations—underlies all such offset possibilities.

Nonetheless, ERISA does not mention integration with workers' compensation, and the legislative history is equally silent on this point. An argument could be advanced that Congress approved integration of pension funds only with the federal benefits expressly mentioned in the Act. A current regulation issued by the Internal Revenue Service, however, goes further, and permits integration with other benefits provided by federal or state law. We now must consider whether this regulation is itself consistent with ERISA.

## B

Codified at 26 CFR §§ 1.411 (a)–(4)(a) (1980), the Treasury Regulation provides that "nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits." The Regulation interprets 26 U. S. C. § 411, the section of the Internal Revenue Code which replicates for IRS purposes ERISA's nonforfeiture provision, 29 U. S. C. § 1053 (a).[13] The Regulation plainly encompasses

---

[13] The Court of Appeals characterized the Treasury Regulation as a "legislative" regulation, entitled to a more restricted scope of review than is applied to "interpretive rules." 616 F. 2d 1238, 1242. Nonetheless, the Government here represents that the Treasury Regulation is an interpretive rule. Brief for United States as *Amicus Curiae* 19, n. 12. Because an agency empowered to enact legislative rules may choose to issue nonlegislative statements, we review this Treasury Regulation under the scrutiny applicable to interpretive rules, with due deference to consistent agency practice. See *Batterton* v. *Francis*, 432 U. S. 416, 425, n. 9 (1977); *Batterton* v. *Marshall*, 208 U. S. App. D. C. 321, 332–333, 648 F. 2d 694,

awards under state workers' compensation laws. In addition, in Revenue Rulings issued prior to ERISA, the IRS expressly had approved reductions in pension benefits corresponding to workers' compensation awards. See, *e. g.,* Rev. Rul. 69–421, Part 4 (j), 1969–2 Cum. Bull. 72; Rev. Rul. 68–243, 1968–1 Cum. Bull. 157.[14]

Retirees contend that the Treasury Regulation and IRS rulings to this effect contravene ERISA. They object first that ERISA's approval of integration was limited to Social Security and Railroad Retirement payments. This objection is precluded by our conclusion that reduction of pension benefits based on the integration procedure are not *per se* prohibited by § 1053 (a), for the level of pension benefits is not prescribed by ERISA. Retirees' only remaining objection is that workers' compensation awards are so different in kind from Social Security and Railroad Retirement payments that their integration could not be authorized under the same rubric.

Developing this argument, retirees claim that workers' compensation provides payments for work-related injuries, while Social Security and Railroad Retirement supply payments solely for wages lost due to retirement. Because of this distinction, retirees conclude that integration of pension funds with workers' compensation awards lacks the rationale

---

705–706 (1980); 2 K. Davis, Administrative Law Treatise § 7.8 (2d ed. 1979).

[14] Furthermore, integration with workers' compensation has been approved by the agency created under ERISA to guarantee payment of all nonforfeitable pension benefits despite termination of the relevant pension plan. That agency, the Pension Benefit Guaranty Corporation, has defined the benefits it guarantees to include "a benefit payable as an annuity, or one or more payments related thereto, to a participant who permanently leaves or has permanently left covered employment, or to a surviving beneficiary, which payments by themselves or in combination with Social Security, Railroad Retirement, or workmen's compensation benefits provide a substantially level income to the recipient." 29 CFR § 2605.2 (1980).

behind integration of pension funds with Social Security and Railroad Retirement. Retirees' claim presumes that ERISA permits integration with Social Security or Railroad Retirement only where there is an identity between the purposes of pension payments and the purposes of the other integrated benefits. But not even the funds that the Congress clearly has approved for integration purposes share the identity of purpose ascribed to them by petitioners. Both the Social Security and Railroad Retirement Acts provide payments for disability as well as for wages lost due to retirement, and ERISA permits pension integration without distinguishing these different kinds of benefits.

Furthermore, when it enacted ERISA, Congress knew of the IRS rulings permitting integration and left them in effect.[15] These rulings do not draw the line between permissi-

[15] The House Ways and Means Committee Report proposed codification of the contemporaneous administrative practice developed by the IRS. That practice included IRS approval of integration procedures. See, e. g., 26 CFR § 1.401-3 (e) (1973); Rev. Rul. 69-421, Part 4, 1969-2 Cum. Bull. 70-74; Rev. Rul. 12, 1953-1 Cum. Bull. 290. These IRS rulings implemented a provision of the Internal Revenue Code, 26 U. S. C. § 401 (a) (4), which forbids favorable tax treatment for pension plans discriminating in favor of company officers, shareholders, or highly compensated employees. The Internal Revenue Code, long before the enactment of ERISA, specified that such forbidden discrimination does not include differences in benefits "because of any retirement benefits created under State or Federal law." 26 U. S. C. § 401 (a) (5) (1976 ed., Supp. III). The IRS has consistently interpreted this discrimination provision to permit pension benefit integration with Social Security and other funds receiving employer contributions and making benefits available to the general public. See, e. g., Rev. Rul. 69-4, 1969-1 Cum. Bull. 118; Rev. Rul. 69-5, 1969-1 Cum. Bull. 125; Rev. Rul. 68-243, 1968-1 Cum. Bull. 157; Rev. Rul. 61-75, 1961-1 Cum. Bull. 140. Congress essentially approved these rulings when its Conference Committee reported: "[T]he conferees intend that the antidiscrimination rules of present law in areas other than the vesting schedule are not to be changed. Thus, the present antidiscrimination rules with respect to coverage, and with respect to contributions and benefits are to remain in effect." H. R. Conf. Rep. No. 93-1280, p. 277 (1974), 3 Leg. Hist. 4544.

ble and impermissible integration where retirees would prefer them to, and instead they include workers' compensation offsets within the ambit of permissible integration. The IRS rulings base their allowance of pension payment integration on three factors: the employer must contribute to the other benefit funds, these other funds must be designed for general public use, and the benefits they supply must correspond to benefits available under the pension plan. The IRS employed these considerations in approving integration with workers' compensation benefits. *E. g.*, Rev. Rul. 69–421, Part 4 (j), 1969–2 Cum. Bull. 72; Rev. Rul. 68–243, 1968–1 Cum. Bull. 157. In contrast, the IRS has disallowed offsets of pension benefits with damages recovered by an employee through a common-law action against the employer. Rev. Rul. 69–421, Part 4 (j)(4), 1969–2 Cum. Bull. 72; Rev. Rul. 68–243, 1968–1 Cum. Bull. 157–158.[16] The IRS also has not per-

---

[16] Retirees argue that workers' compensation should be treated the same as common-law tort damages for the purposes of integration with pension payments. Although workers' compensation resembles tort judgments against employers for employee injuries, there are differences which could explain their different treatment by the IRS. A tort judgment typically represents a finding of the employer's fault for the employee's injury. Workers' compensation, in contrast, is generally available with no showing of an employer's fault or an employee's lack of fault for the work-related injury. 1 A. Larson, Workmen's Compensation Law §§ 2.10, 6.00 (1979). In treating the two sources of payments differently, the IRS may have concluded that workers' compensation is as much an income maintenance program, responding to wage loss, as it is remuneration for injury, and therefore it may be integrated with pension benefits to the advantage of the entire employee group. See generally 4 *id.*, §§ 96.10, 97.10, 97.50. Cf. *Richardson* v. *Belcher,* 404 U. S. 78, 83 (1971) (reductions of Social Security based on workers' compensation comports with due process). In this light, the agency may well have employed the very rationale proffered by retirees—that two benefits systems must have identical purposes before they may be integrated—and departed from retirees' reasoning only in concluding that these two benefit systems share the same purpose of replacing lost wages, whatever the cause. Regardless of which view of workers' compensation this Court finds most compelling,

mitted integration with reimbursement for medical expenses or with fixed sums made for bodily impairment because such payments do not match up with any benefits available under a pension plan qualified under the Internal Revenue Code and ERISA. Rev. Rul. 78–178, 1978–1 Cum. Bull. 118.[17] Similarly, the IRS has disapproved integration with unemployment compensation, for, as payment for temporary layoffs, it too is a kind of benefit not comparable to any permitted in a qualified pension plan. *Id.*, at 117–118.

Without speaking directly of its own rationale, Congress embraced such IRS rulings. See H. R. Conf. Rep. No. 93–1280, p. 277 (1974), 3 Leg. Hist. 4544 (approving existing antidiscrimination rules). Congress thereby permitted integration along the lines already approved by the IRS, which had specifically allowed pension benefit offsets based on workers' compensation. Our judicial function is not to second-guess the policy decisions of the legislature, no matter how appealing we may find contrary rationales.

As a final argument, retirees claim that we should defer to the policy decisions of the state legislature. To this claim we now turn.

## III

The New Jersey Legislature attempted to outlaw the offset clauses by providing that "[t]he right of compensation granted by [the New Jersey Workers' Compensation Act] may be set off against disability pension benefits or payments but *shall not be set off against employees' retirement pension benefits or payments.*" N. J. Stat. Ann. § 34:15–29 (West

---

we must defer to the consistent agency position that is itself reasonable and consonant with the Act.

[17] We note that the General Motors offset clause avoids any ambiguity on this point. It disallows deductions for medical expenses or fixed payments for bodily impairment. See n. 1, *supra*. Although the Raybestos-Manhattan, Inc., plan is silent on this point, it is certainly subject to IRS regulation.

Supp. 1980) (emphasis added).[18]   To resolve retirees' claim that this state policy should govern, we must determine whether such state laws are pre-empted by ERISA.   Our analysis of this problem must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.   Although the Supremacy Clause invalidates state laws that "interfere with, or are contrary to the laws of Congress . . . ," *Gibbons* v. *Ogden,* 9 Wheat. 1, 211 (1824), the " 'exercise of federal supremacy is not lightly to be presumed,' " *New York Dept. of Social Services* v. *Dublino,* 413 U. S. 405, 413 (1973), quoting *Schwartz* v. *Texas,* 344 U. S. 199, 203 (1952).   As we recently reiterated, "[p]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.' " *Chicago & North Western Transp. Co.* v. *Kalo Brick & Tile Co.,* 450 U. S. 311, 317 (1981), quoting *Florida Lime & Avocado Growers* v. *Paul,* 373 U. S. 132, 142 (1963). See *Jones* v. *Rath Packing Co.,* 430 U. S. 519, 525–526 (1977); *Perez* v. *Campbell,* 402 U. S. 637, 649 (1971); *Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 230 (1947); *Hines* v. *Davidowitz,* 312 U. S. 52, 61–62 (1941).

In this instance, we are assisted by an explicit congressional statement about the pre-emptive effect of its action.   The same chapter of ERISA that defines the scope of federal protection of employee pension benefits provides that

> "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003 (a) of this title and not exempt under section 1003 (b) of this title."   29 U. S. C. § 1144 (a).

---

[18] Adopted as an amendment to the New Jersey Workers' Compensation Act, this provision reversed New Jersey's prior approval of workers' compensation offsets in collectively bargained pension agreements. See Brief for Appellee New Jersey in No. 79–1943, pp. 6–7.

This provision demonstrates that Congress intended to depart from its previous legislation that "envisioned the exercise of state regulation power over pension funds," *Malone* v. *White Motor Corp.*, 435 U. S. 497, 512, 514 (1978) (plurality opinion), and meant to establish pension plan regulation as exclusively a federal concern.[19] But for the pre-emption provision to apply here, the New Jersey law must be characterized as a state law "that relate[s] to any employee benefit plan." 29 U. S. C. § 1144 (a).[20] That phrase gives rise to some con-

---

[19] The scope of federal concern is, however, limited by ERISA itself. The statute explicitly preserves state regulation of "insurance, banking, or securities," 29 U. S. C. § 1144 (b)(2)(A); and "generally applicable criminal law[s] of a State," § 1144 (b)(2)(B)(4). ERISA also exempts from its coverage several kinds of plans, which may be subject to state regulation. §§ 1144 (a), 1144 (b)(2)(B). See also H. R. Conf. Rep. No. 93–1280, p. 383 (1974), 3 Leg. Hist. 4650.

[20] ERISA's pre-emption clause exempts state laws relating to pension plans that do not fall within the Act's coverage, see n. 19, *supra*, but no such exemptions are applicable here. The only exemption with any conceivable relevance pertains to state laws governing plans "maintained solely for the purpose of complying with applicable workmen's compensation laws." 29 U. S. C. § 1003 (b)(3). Retirees in No. 80–193 concede that this exception is inapplicable because the General Motors plan is not maintained solely to comply with a workmen's compensation law. Brief for Petitioners in No. 80–193, p. 44.

Retirees in No. 79–1943, however, claim that the exception should apply more generally to plans governed by state workers' compensation laws. They reason that "if a plan which is designed to 'comply with [an] applicable workmen's compensation law' is not preempted by ERISA, then *a fortiori* the underlying statute with which such plan is permitted to comply equally escapes coverage." Reply Brief for Appellants in No. 79–1943, p. 18. This reasoning wreaks havoc on ERISA's plain language, which pre-empts not plans, but "State laws." 29 U. S. C. § 1144 (a). The only relevant state laws, or portions thereof, that survive this pre-emption provision are those relating to plans that are themselves exempted from ERISA's scope. And the relevant exemption from ERISA's coverage—for plans maintained *solely* for compliance with state workers' compensation laws—has no bearing on the plans involved here, which more broadly serve employee needs as a result of collective bargaining. As

fusion where, as here, it is asserted to apply to a state law ostensibly regulating a matter quite different from pension plans. The New Jersey law governs the State's workers' compensation awards, which obviously are subject to the State's police power. As a result, one of the District Court Judges below concluded that the New Jersey provision "is in no way concerned with pension plans *qua* pension plans. On the contrary, the New Jersey statute is solely concerned with protecting the employee's right to worker's compensation disability benefits." *Buczynski* v. *General Motors Corp.,* 456 F. Supp. 867, 873 (NJ 1978). Similarly, the other District Court Judge below reasoned that the New Jersey law "only has a collateral effect on pension plans." *Alessi* v. *Raybestos-Manhattan, Inc.,* Civ. No. 78–0434 (NJ, Feb. 15, 1979). The Court of Appeals rejected these analyses on two grounds. It read the "relate to pension plans" language in "its normal dictionary sense" as indicating a broad pre-emptive intent, and it also reasoned that the *"only* purpose and effect of the [New Jersey] statute is to set forth an additional statutory requirement for pension plans," a purpose not permitted by ERISA. 616 F. 2d, at 1250 (emphasis in original).

We agree with the conclusion reached by the Court of Appeals but arrive there by a different route. Whatever the purpose or purposes of the New Jersey statute, we conclude that it "relate[s] to pension plans" governed by ERISA because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law. ERISA permits integration of pension funds with other public income maintenance moneys for the purpose of calculating benefits, and the IRS interpretation approves integration with the exact funds addressed by the New Jersey workers' compensation law. New Jersey's effort to ban pension benefit offsets based on workers' compensation applies directly to this cal-

retirees do not, and cannot, claim that the plans involved here are free from ERISA's coverage, they cannot claim the exception to pre-emption restricted to laws governing such exempted plans.

culation technique. We need not determine the outer bounds of ERISA's pre-emptive language to find this New Jersey provision an impermissible intrusion on the federal regulatory scheme.[21]

It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the pre-emption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly*, the terms and conditions of employee benefit plans covered by this subchapter." 29 U. S. C. § 1144 (c)(2) (emphasis added). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.

Another consideration bolsters our conclusion that the New Jersey provision is pre-empted insofar as it bears on pensions regulated by ERISA. ERISA leaves integration, along with other pension calculation techniques, subject to the discretion of pension plan designers. See *supra*, at 514–516. Where, as here, the pension plans emerge from collective bargaining, the additional federal interest in precluding state interference with labor-management negotiations calls for pre-emption of state efforts to regulate pension terms. See *Teamsters* v. *Oliver*, 358 U. S. 283, 296 (1959); *Railway Employees* v. *Hanson*, 351 U. S. 225, 232 (1956). Cf. *Motor Coach Employees* v. *Lockridge*, 403 U. S. 274 (1971); *San*

---

[21] Other courts have reached varying conclusions as to the meaning of ERISA's pre-emptive language in other contexts. See, *e. g.*, *American Telephone & Telegraph Co.* v. *Merry*, 592 F. 2d 118 (CA2 1979); *Stone* v. *Stone*, 450 F. Supp. 919 (ND Cal. 1978); *Gast* v. *State*, 36 Ore. App. 441, 585 P. 2d 12 (1978). We express no views on the merits of any of those decisions.

*Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959).[22] As a subject of collective bargaining, pension terms themselves become expressions of federal law, requiring pre-emption of intrusive state law.[23]

## IV

We conclude that N. J. Stat. Ann. § 34:15–29 (West Supp. 1980) is pre-empted by federal law insofar as it bears on pension plans governed by ERISA. We find further that Congress contemplated and approved the kind of pension provisions challenged here, which permit offsets of pension benefits based on workers' compensation awards. The decision of the Court of Appeals is

*Affirmed.*

JUSTICE BRENNAN took no part in the decision of these cases.

---

[22] In light of its reading of ERISA, the Court of Appeals declined to reach the issue of pre-emption under the National Labor Relations Act. 616 F. 2d, at 1250, n. 17. The issue was, however, addressed by the District Court below in *Alessi* v. *Raybestos-Mahattan, Inc.,* Civ. No. 78–0434 (NJ, Feb. 15, 1979). That court reasoned that federal labor law pre-emption does not extend so far as to preclude state regulation of conduct touching deeply rooted local concerns. *Ibid.* (citing *San Diego Building Trades Council* v. *Garmon,* 359 U. S., at 244). Although this reasoning may apply in other contexts, we do not find it compelling in light of the direct clash between the state statute and the federal policy to keep calculation of pension benefits a subject of either labor-management negotiations or federal legislation. In this context, integration of pension benefits with other public income maintenance funds can be forbidden only by the terms of pension plans themselves, or by new federal legislation.

[23] This conclusion follows naturally from the view of a plurality of this Court in *Malone* v. *White Motor Corp.,* 435 U. S. 497 (1978). There, because Congress preserved a state role in pension regulation before ERISA, the plurality created an exception to the general rule pre-empting state regulation of collective bargaining. *Id.,* at 513–514. This exception no longer applies, however, now that ERISA, with express pre-emptive intent, has eliminated state regulation of most pension plans.