ED JACKAMONIS, Speaker State Assembly
The Committee on Assembly Organization has requested my opinion on the validity of a law which would result from the enactment of 1981 Assembly Bill 176. In general, the proposal would create a congressional campaign fund to provide public funding for qualified candidates from this state for the United States House of Representatives. It sets campaign spending and contribution limits on candidates receiving money from the fund, and it places limitations on what campaign expenses can be paid for by the money. Penalties are created for violations of these provisions, and a $2 checkoff replaces the $1 checkoff on state tax returns. Funding under this proposal begins with the 1982 general election.
It is my opinion that the law which would result from the enactment of 1981 AB 176 would be preempted by the Federal Election Campaign Act, 2 U.S.C. secs. 431-55.
 The preemption doctrine is grounded in the Supremacy Clause, U.S. Const. art. VI: *Page 186 
 This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.
Under this clause, the historic police powers of the state are not to be superseded unless that is the clear and manifest purpose of Congress. Rice v. Santa Fe Elevator Corporation,331 U.S. 218, 230 (1947); State v. Amoco Oil Co., 97 Wis.2d 226,239, 293 N.W.2d 487 (1980); Florida Lime and Avocado Growers,Inc. v. Paul, 373 U.S. 132, 142 (1963). However, an express congressional command that a given federal law shall exclusively regulate a certain activity will have the effect of preempting state laws regulating the same activity. Alessi v.Raybestos-Manhattan, Inc., 101 S. Ct. 1895 (1981); Jonesv. Rath Packing Co., 430 U.S. 519 (1977); Gibbons v.Ogden, 22 U.S. (9 Wheat.) 1 (1824).
The Federal Election Campaign Act, 2 U.S.C. § 431-55, already provides federal regulation of campaigns for the United States House of Representatives by limiting campaign expenditures, regulating sources of campaign funds and providing campaign funding, much as the state would attempt to do by passage of 1981 AB 176. Moreover, Congress provided in 2 U.S.C. sec. 453: "The provisions of this Act, and of the rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office [such as the United States House of Representatives]."
The provisions of 2 U.S.C. sec. 453 make it clear that the federal law is to occupy the field in the area of regulating campaign expenditures, sources of campaign funds and the conduct of campaigns for such federal offices as the House of Representatives. No state law regulating any part of this field is to have any force or effect. The authority of the state to regulate federal campaigns extends only to the power to prohibit false voter registration, vote fraud, theft of ballots and similar offenses. S. Rep. No. 93-689, reprinted in [1974] U.S. Code Cong. Adm. News 5587, 5638. *Page 187 
The express statutory wording and the legislative history of2 U.S.C. sec. 453 plainly indicate that Congress has expressly preempted all state legislation such as 1981 AB 176. Cases such as Alessi and Jones further indicate that such express commands of federal supremacy as in 2 U.S.C. sec. 453 are effective to preempt state regulation of the identical subject matter.
Since Congress has expressly preempted state law dealing with the subject matter of 2 U.S.C. § 431-55, and since 1981 AB 176 would also attempt to regulate that same subject matter, I conclude that the law which would result from the enactment of 1981 AB 176 would be invalid under the Supremacy Clause, U.S. Const. art VI.
BCL:JDJ:EWJF