Gordon LUNN, Plaintiff–Appellant,

v.

MONTGOMERY WARD & COMPANY, INCORPORATED, Retirement Security Plan, Defendant–Appellee.

No. 98–1765.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1998.

Decided Jan. 26, 1999.

Rehearing Denied March 4, 1999.

---

Charles R. Watkins (argued), Susman, Buehler & Watkins, Chicago, IL, Alan C. Engerman, Northbrook, IL, for Plaintiff–Appellant.

Roger B. Harris (argued), Altheimer & Gray, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and RIPPLE and EVANS, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Gordon Lunn, retired from Montgomery Ward in 1992 at age 69, four years past the normal retirement age. He seeks additional retirement benefits, claiming that in computing his pension the defendant both violated the terms of the pension plan and violated a provision of ERISA designed to prevent companies from penalizing employees who work past the normal retirement age. Lunn purports to be suing on behalf of a class of similarly situated Wards retirees, but the suit was dismissed, for failure to state a claim, before any class was certified.

The Wards pension plan is actually two plans, but they are integrated. One, called the Savings and Profit Sharing Plan (SPS), is a defined contribution plan. The other, the Retirement Security Plan (RSP), is a defined benefits plan. The employee is required to be enrolled in both plans. Together, they make up what is called a "floor-offset" arrangement, which has been blessed by the IRS, Rev. Rul. 76–259, 1976–2. Cum. Bull. 111; Donald R. Stacy, "A Possibility of Avoiding 'Double Dipping' Into Severance and Pension Payments," 5 *Lab. Law.* 1, 16 (1989); see also Judith F. Mazo, "Floor–Offset Plans," 223 *PLI/Tax* 283 (1985); cf. 29 U.S.C. 1107(d)(9), as qualifying for the favorable tax treatment accorded pension plans that comply with the relevant requirements of the Internal Revenue Code, which in turn parallel the requirements of ERISA. 1 Ronald J. Cooke, *ERISA Practice and Procedure* § 1.4, p. 1–5 (2d ed.1996). This lawsuit is a flank attack on floor-offset arrangements. Although there are no cases on point, it is apparent that the attack must fail.

We must describe the two plans. The SPS is funded by the employee. Three percent of his salary is deposited to his SPS account and invested in stock or other securities, at the employee's election. When he retires, he gets the balance in his account. The RSP provides the retiree with an annual benefit equal to 1.5 percent of his total earnings as a Wards employee, minus, however, whatever annuity he could buy with the balance in his SPS account. That deduction is the integration feature of the arrangement. To see how it works, suppose that the employee had worked for Wards for 10 years at an average salary of $50,000. His SPS balance upon retirement would be $15,000 (10 × $50,000 × .03) plus whatever his account had earned, and suppose this total (deposits plus earnings) was $30,000. How large an annuity he could buy for $30,000 would depend on his life expectancy and on interest rates; suppose he could buy an annuity that would pay him $5,000 a year. His annual RSP benefit, which if computed without regard to the hypothetical annuity would be $7,500 (10 × $50,000 × .015), would thus be reduced by $5,000. In this example, the employee's net retirement benefit, which is determined by the interaction of the two plans, is essentially equal to his RSP benefit. It is identical to it if he actually buys the annuity, which he isn't

required to do. If he doesn't buy it, he would have $30,000 plus $2,500 a year.

The longer you work for Wards, the larger the share of your total retirement benefit that will come from the SPS plan. This can be seen by changing the number of years of service in the previous example from 10 to 20. Then the total deposits in the SPS account would be $30,000 rather than $15,000, and since they would be yielding earnings over a much longer period the account balance at the end would probably be more than twice the amount of deposits, and let us say, conservatively, that it would be $75,000, enabling the purchase of an annuity of $12,500 a year. The employee's RSP benefit, computed before the deduction of the annuity, would be $15,000 a year ($20 \times \$50,000 \times .015$); but after deduction of the annuity value of his SPS balance, it would be only $2,500. So the 20–year worker would be getting 5/6 of his total retirement benefit from the SPS plan ($12,500/$15,000), while the 10–year worker would be getting only 2/3 of his total retirement benefit from that plan ($5,000/$7,500).

Now suppose that both workers had gone to work for Wards at the age of 55, implying that the 10–year worker retired at the age of 65 and the 20–year worker at 75. Although the older retiree would be getting a much larger combined benefit from the two plans ($15,000 versus $7,500), his RSP benefit would be the same, $2,500 a year—and the entitlement to this annual benefit would be worth less in an actuarial sense because a 75 year old has a shorter life expectancy than a 65 year old; he can expect to receive $2,500 a year for fewer years. According to the plaintiff, this shows that Wards' retirement program, at least as interpreted by Wards (our description of how the plans operate is based on that interpretation), discriminates against employees who work beyond the normal retirement age of 65, and this, he claims, violates the terms of the plan as well as the terms of ERISA.

The RSP plan document provides that an employee who works beyond the normal retirement age of 65 shall be entitled to "the same amount" that he "was entitled to receive" at age 65, "with additional credit for Service [i.e., employment] after such date." So far, there is no violation, at least of the plan; for the obvious meaning of the quoted provision is simply that the employee is entitled to keep accruing RSP benefits at the same rate until he retires. That is, each year that he works beyond the age of 65 his annual RSP credit (before the deduction of the annuity value of his SPS balance) grows by the same 1.5 percent of earnings as in the years up to 65.

Another provision in the RSP plan document provides that the late-retiring employee "shall be eligible" for either the RSP annual benefit "or a benefit of Equivalent Actuarial Value thereto as provided for herein." All this means is that Wards can substitute for the annual benefit a lump sum or annuity that is the actuarial equivalent of the annual benefit, that is, that is equal to the present value of the future stream of annual benefits. Neither provision has anything to do with the relation between the size of the RSP benefit actually received by a late-retiring employee and the size of the RSP benefit that he would have received had he retired at age 65. For that size depends on the annuity value of the SPS account, which varies with the length of service of the employee and the performance of the securities markets.

■ The plaintiff wants us to read the RSP plan as requiring that the RSP benefit actually paid to the late-retiring employee exceed what he would have received had he retired at age 65 by enough to compensate the employee for the reduced length of time (as a result of his being older) over which he can expect to continue receiving the benefit. So interpreted, the RSP plan would confer windfalls on employees who work beyond the normal retirement age. Compare two workers in a year in which a booming stock market causes each worker's SPS balance to soar. To assure comparability assume that both workers have the same length of service and lifetime earnings with Wards. One worker is 65 at the end of the year and retires then. The other is 66 at the end of the year and also retires then. The first worker's RSP benefit would be reduced by the full annuity value of his SPS account, as swollen by the previous year's stock-market

performance, as of the date of his retirement. The second worker's RSP benefit would, on Lunn's interpretation, have to be reduced by a smaller amount, in order to "compensate" him for the fact that he has a shorter life expectancy, being a year older. But from the company's standpoint the workers are identical and have been treated identically. They differ only in age, which is irrelevant to the company; the second worker is asking the company to give him an extra benefit *solely* on account of his age.

The implications of the plaintiff's position are shown graphically below. The graph on the left ("current") shows how the plan works under Wards' interpretation; the graph on the right is the interpretation proposed by the plaintiff. The graphs are based on our earlier arithmetical example.

It would be most unlikely for Wards to have intended to create the pattern of benefits shown in the right-hand graph. The purpose of the integrated arrangement is to provide, in the RSP component, insurance against the vagaries of securities investments (the SPS component), as well as to provide a benefits floor for retirees who have not worked a long time for Wards. These are legitimate purposes, neither of which is furthered by giving the retiree additional RSP benefits on account not of his years of service or the performance of the stock market, but of his age. A strained contractual interpretation that yields a result so at variance with what the parties were trying to achieve in their contract hardly commends itself as capturing the parties' understanding.

■ Turning from contractual to statutory interpretation, we think it equally unlikely that ERISA would require a subsidy for older workers. The provision of ERISA on which the plaintiff primarily relies, section 203(a), 29 U.S.C. § 1053(a), provides that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." That provision has no possible application here, because

nothing in the plan forfeits retirement benefits when the employee reaches the normal retirement age. Lunn could have retired at age 65 with the normal retirement benefit.

Another provision of ERISA may be relevant: section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), added to ERISA by the Omnibus Budget Reconciliation Act of 1986, forbids reducing "the rate of an employee's benefit accrual ... because of the attainment of *any* age" (emphasis added). See *Greenhalgh v. Putnam Savings Bank*, 140 F.3d 427 (2d Cir.1998); *Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1200–01 (8th Cir.1992); see also 29 U.S.C. § 1054(b)(1)(G). Wards could not say to Lunn, if you insist on working after you reach the age of 65, we're going to cut down your normal retirement benefits. But Wards did not say (or do) that. Lunn remained in the retirement plan(s), accruing benefits in exactly the same way he had been doing before he turned 65, until he retired. He was treated the same as all other workers; there was no forfeiture. Reverse age discrimination is not the theory of ERISA.

If Lunn is right, the integration of an ERISA pension plan with social security is wrong, since the effect is to reduce the

amount of the pension by the retiree's social security benefits, and obviously it is a reduction that is correlated with age. But in *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 509–21, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Supreme Court made clear that such integration does not violate ERISA. *Alessi* involved a pension offset for workers' compensation benefits rather than for social security benefits, but the Court's opinion makes clear that the latter type of offset is okay too, see *id.* at 516–17, 101 S.Ct. 1895, interpreting 29 U.S.C. §§ 1054(b)(1)(B)(iv), (C), and this scotches Lunn's argument—unless he's right that to allow benefits under one ERISA plan to be offset against benefits under another would improperly treat them as one plan.

The premise is incorrect. Floor-offset plans do not have to be treated as separate for all purposes. For some purposes they are separate, see 26 U.S.C. § 414(*l*); 26 C.F.R. § 1.414(*l*)–1(b)(1); for others they are a single plan. See 26 U.S.C. § 414(k); 26 C.F.R. § 1.401(a)–8(d); 29 U.S.C. § 1107(d)(9). In arguing that separate plans cannot be integrated without providing a subsidy to older workers, Lunn is seeking to burden arbitrarily an accepted form of retirement package.

Lunn's position has an even more radical implication, though he does not draw it: that all defined benefits plans violate section 203(a). The longer a worker works after normal retirement age, the less likely the increase in his benefits as a result of additional years of service is to offset the loss in expected benefits as a result of reduced life expectancy. Suppose that Wards had only the defined benefits plan (RSP) and that Lunn, having worked for Wards for, let us say, 20 years before his sixty-fifth birthday, kept working after that until he was 80, earning (as in the previous arithmetical examples) $50,000 a year throughout his employment. Then his total earnings past normal retirement age would be $750,000 (15 × $50,000), entitling him to an additional annual benefit of $11,250 (.015 × $750,000) on top of

the $15,000 that he would have been entitled to had he retired at 65 (.015 × 20 × $50,-000). By delaying his retirement for 15 years, he would have forgone total retirement benefits of $225,000 (15 × $15,000), and this loss might exceed the expected value of the additional $11,250 a year that he would be receiving by retiring at 80. Yet no one supposes, and Lunn does not argue, that defined benefits plans violate ERISA, or any other statute, merely because, depending on the age of the employee and his choice of when to retire, the actuarial value of his retirement benefits may be less than if he had retired at the normal retirement age. Or that to comply with ERISA, a defined benefits plan must begin paying benefits to the employee when he reaches the normal retirement age even if he doesn't retire then.

AFFIRMED.