**Richard A. MOORE and Mary Amstad, on behalf of themselves and as representatives of a class of persons similarly situated, Plaintiffs–Appellants,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, a mutual company incorporated in New York State, Defendant–Appellee.**

**No. 641, Docket 87–7793.**

United States Court of Appeals, Second Circuit.

Argued Feb. 3, 1988.

Decided Sept. 2, 1988.

come Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982). These plans contain provisions unambiguously reserving Metropolitan's right to amend or terminate them. Pursuant to that reservation of rights, Metropolitan has amended the plan numerous times, usually augmenting benefits, but sometimes diminishing them. This appeal presents the question of whether Metropolitan may be barred from altering benefits under the plans by various communications to its employees that described the plans as, *inter alia,* providing "lifetime" benefits "at no cost." We hold that the unambiguous provisions of the plan must govern, because altering a welfare benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA. Accordingly, we affirm.

## BACKGROUND

Metropolitan has provided group health insurance to its employees for over seventy years. Metropolitan presently maintains a multipart Insurance & Retirement Program ("I & R Program") for eligible employees and field representatives. At issue are the medical plans provided under two parts of the I & R Program. The first is the Comprehensive Medical Expense Plan, covering both active employees and retirees under the age of 65 ("Comprehensive Plan"). The second is the Supplementary Medical Expense Plan, covering retirees 65 years of age and older ("Supplemental Plan").

Metropolitan's medical plans constitute welfare benefit plans under Section 3(1) of ERISA, 29 U.S.C. § 1002(1). ERISA requires that the plan administrator, here Metropolitan, file a "plan description" with the Secretary of Labor and furnish plan participants and beneficiaries with a summary plan description ("SPD") "written in a manner calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights ... under the plan." 29 U.S.C. § 1022. *See also* 29 U.S.C.

Irving R. M. Panzer, Washington, D.C. (Daniel J. Gatti, Gatti, Gatti, Maier & Smith, Portland, Or., Tas Coroneos, Chevy Chase, Md., Stanley Heisler, New York City, of counsel), for plaintiffs-appellants.

Larry M. Lavinsky, New York City (Robert J. Kochenthal, Jr., Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for defendant-appellee.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Defendant-appellee Metropolitan Life Insurance Company ("Metropolitan") maintains medical benefit plans for its employees under the Employee Retirement In-

§§ 1021, 1024. Metropolitan issued its initial SPD when the SPD requirement first became effective in 1977, and issued a second SPD in 1984. Both SPDs unambiguously reserved to Metropolitan the right to change or discontinue the medical expense plans. The 1977 SPD thus stated: "The Company expects to continue the Metropolitan Insurance and Retirement Program and the other employee benefit plans. However, it reserves the right to change or discontinue any portion of the benefits described in this summary." The 1984 SPD included similar language, under the heading "Change or Discontinuance of Plan."

Over the years, Metropolitan has published booklets other than SPDs explaining its group insurance benefits. With one exception, each of these booklets unambiguously reserved to Metropolitan the right to amend or terminate the benefits offered. For example, as early as 1915, the company used the following language:

> These rules may be modified or repealed by the Company's Executive at any time and without prior notice; the Company reserves the right to withdraw, at any time, and without prior notice, any or all contributions, bonuses, allowances or privileges provided for by these rules.

More recent booklets have contained language similar to the following:

### CHANGE OR DISCONTINUANCE OF PLAN

The Company reserves the right at any time to change or discontinue this Supplementary Medical Expense Plan, except that any change shall be subject to the approval of the Superintendent of Insurance of the State of New York.

The single booklet omitting an express reservation of a right to amend or terminate was published in 1976—after ERISA was enacted in 1974, but before final regulations governing SPDs were promulgated in 1977. However, the following statement appeared on the booklet's inside front cover:

> This summary describes briefly, in general terms, the important provisions of the Metropolitan Insurance and Retirement Program and other Company benefits. Complete details, terms, and conditions are contained in Plan Documents and Group Contracts. The specific language of the Plan Documents and Group Contracts will govern in every respect and instance.

Metropolitan has also communicated with its employees and retirees concerning its I & R Programs in other ways. Filmstrips have been used to explain and promote the various benefits available under its different plans. Metropolitan's managers and supervisors are given materials to be used in conjunction with these filmstrips and are encouraged to make an effort to convey to the company's employees the details of the various coverages. Articles explaining Metropolitan's various I & R Programs have also appeared in Metropolitan's employee newspapers as well as in specific memoranda and letters to active employees and retirees. Metropolitan's right to amend or terminate benefits was generally not stated in these various presentations. Moreover, these presentations occasionally described these benefits as being for the employee's "lifetime," and "at no cost."

Over time, Metropolitan has made numerous changes in its medical plans. While most of these changes have broadened coverage, some have diminished particular benefits. For example, prior to 1979, the annual deductible amount under both the Comprehensive and Supplementary Plans was $50 per person/$100 maximum per family. Effective January 1, 1979, the Comprehensive Plan deductible was doubled to $100 per person/$200 per family. Because the Comprehensive Plan covers retirees under the age of sixty-five as well as active employees, the 1979 change raised the deductible amount for some retirees. Contributions have also changed over the years. Prior to 1975, the Comprehensive Plan had been contributory for over thirty years. Effective mid-1975 and 1976 (depending upon employment classification), it became non-contributory. On May 1, 1978, however, it was made contributory again, in conjunction with the

addition of a dental plan and improvements in the Comprehensive Plan.

The changes in the medical plans that precipitated this lawsuit occurred in 1984 and 1985. In January 1984, the deductible amount was raised to $356 per person/$712 per family. The Medicare deductible, formerly eligible for reimbursement, was made ineligible. In December 1984, the deductible was increased again, to $400 per person/$800 per family. Another increase in 1985 raised the deductible to $424 per person/$848 per family.

The named plaintiffs in this suit are retired Metropolitan employees. They purport to bring the action on behalf of the class of all retirees, surviving spouses, and disabled employees of Metropolitan eligible to receive benefits under the welfare provisions of Metropolitan's I & R Program. Count One of the complaint claimed that, under ERISA, Metropolitan lacked the power to change these benefits. Count Two alleged that such changes were a breach of a unilateral contract between Metropolitan and its retirees. Count Three asserted an estoppel theory. Count Four alleged that Metropolitan was barred from making changes in its welfare plan because its SPDs failed to meet the notice requirements of Section 102(b) of ERISA, 29 U.S. C. § 1022(b). Count Five argued in the alternative that this failure to publish proper SPDs under Section 102(b) required a payment of damages even if such a failure did not in itself bar Metropolitan from making these changes.

Following discovery, Metropolitan moved for summary judgment, and the district court granted the motion. Because plaintiffs conceded that there is no "automatic vesting" of welfare benefits under ERISA, the court dismissed Count One. As to Count Two, the district court held that Metropolitan's plan and SPDs, which contained unambiguous reservations of the right to amend or terminate, were controlling and that extrinsic evidence could not be considered. As to Count Three, the district court found no basis for an estoppel claim in ERISA or the federal common law and held that ERISA itself positively precludes informal written modifications of employee benefit plans of the kind necessary for plaintiffs' estoppel theory to succeed. Finally, the district court found that the plaintiffs misunderstood the notice requirements for SPDs in ERISA Section 102(b), and that Metropolitan's SPDs amply satisfied those requirements. Because plaintiffs have abandoned Counts One, Two and Three on appeal, only the unilateral contract and estoppel claims are before us.

## DISCUSSION

ERISA regulates pension plans far more extensively than welfare plans. For example, welfare plans are expressly exempted from the Act's detailed minimum participation, vesting and benefit-accrual requirements and are not subject to ERISA's minimum-funding requirements. As explained by Committees of both the House and Senate, the term "accrued benefit"

> refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance, which are sometimes provided for employees in conjunction with a pension plan, and are sometimes provided separately. To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.

H.R.Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4726; S.Rep. No. 93–383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4935.

Automatic vesting does not occur in the case of welfare plans, and Metropolitan clearly reserved in the plan documents and in the SPDs the right to amend or terminate the plans at issue. Plaintiffs are therefore driven to argue that the "contract" between themselves and Metropolitan "consists of the totality of the representations made to the employees by the Company, and the actions of the employees in accepting those representations by re-

maining with the Company."[1] We disagree.

Congress intended ERISA "to occupy fully the field of employee benefit plans and to establish it 'as exclusively a federal concern.'" *Gilbert v. Burlington Indus. Inc.*, 765 F.2d 320, 326 (2d Cir.1985) (ERISA preempts statutory and common law claims) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed. 2d 558 (1986). Section 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly states that the provisions of the Act "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...."

Plaintiffs' argument, if accepted, would undermine ERISA's framework which ensures that plans be governed by written documents filed under ERISA's reporting requirements and that SPDs, drafted in understandable language, be the primary means of informing participants and beneficiaries. *See* 29 U.S.C. § 1022(a)(1) (SPD must be provided to participants and beneficiaries), § 1022(a)(2) (plan description to be filed with Secretary of Labor), § 1102(a)(1) (every plan to be established and maintained pursuant to a written instrument), and § 1102(b)(3) (requiring plan to specify amendment procedures); *see also Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986) (disallowing oral revisions to ERISA plans).

Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology, and increases in the costs of treatment independent of inflation. These unstable variables prevent accurate predictions of future needs and costs. While these plaintiffs would be helped by a decision in their favor, such a ruling would not only fly in the face of ERISA's plain language but would also decrease protection for future employees and retirees.

We therefore conclude that, absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries. No such showing has been made here. The record contains no hint of bad faith, intent to deceive or even conduct that was objectively, if unintentionally, misleading on Metropolitan's part. The SPDs and all but one booklet have for over seven decades indicated in a straightforward way Metropolitan's reservations of a right to amend or terminate. The single booklet omitting an express reservation of the right to amend or terminate medical benefits expressly noted that it was not a complete statement of the terms of the plans and was not the governing document.

---

**1.** Plaintiffs rely upon three cases to support their argument that extrinsic evidence is admissible to vitiate a right to amend or terminate a clause in ERISA plan documents: *Musto v. American Gen'l Corp.*, 615 F.Supp. 1483 (M.D. Tenn.1985); *Eardman v. Bethlehem Steel Corp.*, 607 F.Supp. 196 (W.D.N.Y.1984), *appeal dismissed*, 755 F.2d 913 (2d Cir.1985); *Amato v.* *Western Union Int'l, Inc.*, 773 F.2d 1402 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Actually, however, *Musto*, *Eardman* and *Amato* bar consideration of extrinsic evidence where a welfare benefit plan unambiguously reserves the plan administrator's right to amend and terminate the plan.

Likewise the filmstrips and other presentations did not purport to be complete binding statements of plan terms. While the use of language such as "lifetime" or "at no cost" might conceivably create a triable issue of fact on a contract theory, it does not constitute the kind of misleading behavior that would cause us to override plan documents and SPDs created pursuant to ERISA.

AFFIRMED.