**LUMBER INDUSTRY PENSION FUND, Plaintiff,**

v.

**WARM SPRINGS FOREST PRODUCTS INDUSTRIES, Defendant.**

**No. CIV.S–88–1218 RAR.**

United States District Court,
E.D. California.

Jan. 2, 1990.

---

Robert A. Gordon, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

Dennis C. Karnopp, Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend, Or., for defendant.

## ORDER

RAMIREZ, District Judge.

By motion filed January 26, 1989, defendant WARM SPRINGS FOREST PRODUCTS INDUSTRIES seeks dismissal of the underlying action, arguing that plaintiff LUMBER INDUSTRY PENSION PLAN's complaint is barred by the doctrine of Indian sovereign immunity and, in the alternative, that the federal statute under which plaintiff filed its suit is inapplicable to the defendant enterprise. The matter came on for hearing during this court's regularly scheduled law and motion calendar for March 6, 1989. By order filed April 11, 1989, the court found, without prejudice, that the defendant was not immune from suit under the doctrine of sovereign immunity;[1] however, with respect to the applicability of ERISA to the defendant, the court directed the parties to file additional briefing.

Having now reviewed the supplemental pleadings, and being mindful of the prior argument, the court issues the following memorandum opinion which, together with its previous order of April 11, 1989, is intended to resolve the remaining issues raised by defendant's motion.

## BACKGROUND

Plaintiff LUMBER INDUSTRY PENSION FUND is the administrator of a multi-employer pension plan established in accordance with the Labor Management Relations Act ("LMRA") 29 U.S.C. § 141 *et seq.* and the Employment Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.* The pension plan requires employers who have entered into collective bargaining agreements with local lumber industry unions to contribute a certain sum of money

---

**1.** The court herein affirms its prior ruling regarding tribal immunity and addresses itself exclusively to the applicability of ERISA and the issue of subject matter jurisdiction.

on behalf of each employee who was hired under the agreement.

Defendant WARM SPRINGS FOREST PRODUCTS INDUSTRIES (hereinafter "WSFPI") is an Indian owned and operated lumber mill, existing on the Warm Springs Indian Reservation.[2] The reservation itself is inhabited by a confederation of three separate tribes governed by a single tribal council. The tribal council established WSFPI under its corporate charter in 1967.

In its operation as a commercial enterprise, WSFPI signed a collective bargaining agreement with a local union which requires it to make pension contributions to the plaintiff's fund. In November of 1987, however, WSFPI ceased making pension fund payments for those employees who were also tribal members.[3] In a letter to the fund, WSFPI explained that a recent ordinance to the tribes' retirement income plan mandated that tribal members receive at least the same level of benefits and plan flexibility under any pension plan of the tribes' business enterprises as they would receive under the tribal plan. The letter went on to indicate that a review of the Lumber Industry Pension Plan revealed that continuing contributions to the plan would violate the recent ordinance.

When the defendant WSFPI discontinued making pension contributions, plaintiff Lumber Industry Pension Fund filed this action to collect the amount due. Defendant moves to dismiss the action on the ground that ERISA is not applicable to the confederated tribes and its enterprises.

DISCUSSION

■ The court begins by noting the uniquely limited nature of Indian sovereignty: "[i]t exists only at the sufferance of Congress and is subject to complete defeasance." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55

L.Ed.2d 303 (1978). *See also, Rice v. Rehner*, 463 U.S. 713, 719, 103 S.Ct. 3291, 3296, 77 L.Ed.2d 961 (1983). Nevertheless, Indian tribes remain " 'distinct, independent political communities, retaining their natural rights' in matters of local self government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978), citing *Worcester v. Georgia*, 6 Pet. 515, 559, 8 L.Ed. 483 (1832). Thus, as a separate people, Indians retain "the power to make their own substantive law in internal matters, and to enforce that law in their own forums." *Martinez*, 436 U.S. at 55–56, 98 S.Ct. at 1675 (citations omitted).

Given the nature of Indian sovereignty, the court must determine whether ERISA, a "comprehensive and reticulated statute" of general application, *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981) (citations omitted), applies to defendant WSFPI. Specifically, the court must determine whether Congress, invested as it is with the plenary power to limit or completely divest the sovereignty of Indian tribes, intended, by its silence, to exclude WSFPI from the scope of ERISA.

■ The general rule regarding the applicability of federal laws to Indian tribes was enunciated by the Supreme Court in *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed.2d 584 (1960). The Court stated that "a general statute in terms applying to all persons includes Indians and their property interests." Although the Ninth Circuit has noted that the language in *Tuscarora* is dictum, it has also stated that "it is dictum that has guided many of our decisions." *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985). In fact, in answer to the defen-

---

**2.** The Warm Springs Indian Reservation is located in north-central Oregon and consists of approximately 640,000 acres, or 1,000 square miles.

**3.** The Lumber Industry Pension Plan is known as a defined benefit plan or a "pooled fund" inasmuch as the signatory to the agreement is bound to make monthly contributions on behalf

of all the employees to the bargaining agreement. A failure to make such payments on behalf of any employees is a blow to the financial integrity of the plan and causes the employer to become liable for the unpaid contributions, plus interest, liquidated damages and attorneys' fees. Plaintiff alleges that defendant owes at least $139,000 in contributions.

dant's argument that the court should adopt the brightline rule that federal laws will not apply to Indians and tribes unless expressly provided by Congress, the Ninth Circuit has specifically held that "federal laws generally applicable throughout the United States apply with equal force to Indians on reservations." *United States v. Farris,* 624 F.2d 890, 893 (9th Cir.1980). *See also Donovan v. Coeur d'Alene Tribal Farm,* 751 F.2d 1113, 1116 (9th Cir.1985) (stating that the Ninth Circuit has "not adopted the proposition that Indian tribes are subject only to those laws of the United States expressly made applicable to them.")

■ Nevertheless, three important exceptions exist to the general proposition that federal laws of universal applicability apply to Indian tribes. In particular, in *Coeur d'Alene,* 751 F.2d at 1116, the Ninth Circuit stated:

A federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations...." [quoting *Farris,* 624 F.2d at 893–94.] In any of these situations, Congress must *expressly* apply a statute to Indians before we will hold that it reaches them.

Although defendant WSFPI contends that ERISA is inapplicable to its enterprise under all three of above-named exceptions, the court specifically finds that it lacks subject matter jurisdiction because ERISA touches "exclusive rights of self-governance" and will thus limit the remainder of its discussion to that exception.

In *Coeur d'Alene,* the Ninth Circuit held that the Occupational Health and Safety Act ("OSHA"), 29 U.S.C. § 651 *et seq.,* applied to a tribal farm wholly owned and operated by the Coeur d'Alene Indian Tribe. The Tribe argued that the application of OSHA regulations and their attend-

ant influence on the commercial activity of the farm interfered with the tribe's self-government, thus requiring a clear expression of intent from Congress. The court rejected defendant's argument as too broad, reasoning that the application of OSHA regulations was no more intrusive to the farm than the imposition of federal taxes—a federal regulation which the Ninth Circuit has already held applies to tribal commercial activities without a clear expression of that intent from Congress. *Id.* at 1116, citing *Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz,* 691 F.2d 878 (9th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983). Specifically, the court in *Coeur d'Alene* stated:

We believe that the tribal self-government exception is designed to except purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations from the general rule that otherwise applicable federal statutes apply to Indian tribes. *See Farris,* 624 F.2d at 893.

The operation of a farm that sells produce on the open market and in interstate commerce is not an aspect of tribal self-government.

*Id.* at 1116.

■ Presented as it is with merely a partial list of what constitutes "purely intramural matters" of self-government, the court is obviously left with the task of determining whether ERISA touches exclusive rights of self-governance. In this regard, plaintiff argues that ERISA, like OSHA, does not touch the aspects of sovereignty mentioned by the court in *Coeur d'Alene.* In equating the two federal statutes, plaintiff ignores several essential differences between the two statutory schemes. OSHA regulations, which are designed to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions ...", 29 U.S.C. § 651(b)(1982), are confined to the conditions and implements of the commercial enterprise itself. ERISA, on the other hand, primarily regulates employee

welfare benefit plans.[4] Its effects, therefore, extend well beyond the activity of the business enterprise and into the retirement years of tribal employees. Moreover, whereas OSHA can work in conjunction with tribal attempts to improve health and safety at the work place, the implementation of ERISA could, as with the matter at bar, contravene the tribal attempt at governing its own pension system. Finally, to whatever extent the court in *Coeur d'Alene* meant to implicate the effective allocation of capital with its mention of "inheritance rules" as an example of a purely intramural matter, the formulation of pension plans also implicates such concerns.[5]

Notwithstanding the differences between OSHA and ERISA, plaintiffs' correctly note that the Seventh Circuit has held that the application of ERISA to a tribal enterprise does not concern exclusive rights of self-governance and therefore requires no clear expression of intent from Congress. In *Smart v. State Farm Ins. Co.*, 868 F.2d 929 (7th Cir.1989), plaintiff was a member of the Bad River Band of the Chippewa Tribe and employed by an Indian owned and operated health center. He sued State Farm for benefits allegedly owed to him under a group insurance policy issued to employees of the health center. Defendant's removed the action to federal court, premising federal jurisdiction on § 502(a)(1)(B) of ERISA. In finding that ERISA was applicable to the tribe despite the lack of an express congressional intent to that effect, the court stated:

> The application of ERISA to this case would not impermissibly upset the Tribe's self-governance in intramural matters. ERISA does not broadly and completely define the employment rela-

tionship—even less so than federal withholding tax. It is only applied to an employment relationship if the employer decides to offer an employee benefit plan.

*Id.* at 935.

The court is of the view that the holding in *Smart*, to an extent, can be distinguished on its facts. Unlike the instant matter, the court in *Smart* dealt only with "the subscription of services and pooling of risks with State Farm, an outside, non-Indian agent." *Id.* at 936. Here, the application of ERISA would force the tribal council to comply with an arraignment that it deemed contrary to the best interest of its tribal members. Moreover, and perhaps more importantly, there is no indication from the facts of *Smart* that the Indian tribe had established a pension plan of its own.

To whatever extent the court in *Smart* premised its decision on a finding that ERISA does not touch exclusive concerns of self-government, this court respectfully disagrees. Although what constitutes an "intramural matter" of self-governance has yet to be precisely defined, the Ninth Circuit evidently looks to those affairs which, by their nature, are of a central and peculiar concern to a tribal government attempting to manage the interest of its people. In this regard, the financial security of individuals beyond their working years is a central concern of any responsible sovereignty. The tribal council has addressed this concern by instituting its own comprehensive pension plan for its tribal members. And, although the instant action is premised on the breach of an agreement made outside the bounds of the tribes, the court's jurisdiction over the dispute is ulti-

---

**4.** In particular, Section 2(b) (29 U.S.C. § 1001(b)) of ERISA states:

> It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate reme-

dies, sanctions and ready access to the Federal courts.

**5.** The court pauses to concede the elusive nature of such differentiation. Nonetheless, when presented with the sort of unclear line drawing effected by the tribal self-government exception, there will necessarily exist federal statutes which rest somewhere close to either side of the distinction. In such instances, an attention to such subtlety is crucial for the exception to have any significance at all.

mately tied to a finding that Congress—despite its silence, indeed, through its silence—intended to usurp the tribes' right to control and regulate its pension matters from within.

The court resolves this issue by noting that "a proper respect both for tribal sovereignty itself and for the plenary authority of Congress ... cautions that [it] tread lightly in the absence of clear indications of legislative intent." *Martinez,* 436 U.S. at 60, 98 S.Ct. at 1677–78. Furthermore, "traditional notions of Indian self-government are so deeply ingrained in our jurisprudence that they have provided an important 'backdrop' ... against which vague or ambiguous federal enactments must always be measured." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980), quoting *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973).

Thus, absent a clear directive from the Ninth Circuit to the contrary, the court, ever mindful and deeply sensitive to the historical plight of the American Indian, holds that the formulation and operation of a tribal pension plan is a purely intramural matter of self-government. For the tribal self-government exception to be of any value beyond beads and trinkets, this must be the case.

For the foregoing reasons, and good cause appearing therefor,

IT IS HEREBY ORDERED that defendant's motion to dismiss is GRANTED on the grounds that ERISA touches exclusive rights of self-governance in purely intramural matters.

IT IS SO ORDERED.