■ In the Matter of BELTRONE CONSTRUCTION COMPANY, INC., Petitioner, v JAMES J. McGOWAN, as Commissioner of the New York State Department of Labor, Respondent. [688 NYS2d 783] —Crew III, J. Proceeding pursuant to CPLR article 78

(initiated in this Court pursuant to Labor Law §§ 220 and 220-b) to review a determination of respondent which found that petitioner's subcontractor had willfully failed to pay prevailing wages and supplements and assessed the underpayments to petitioner as prime contractor.

In June 1990, petitioner entered into a public works contract with the Office of General Services for work to be performed at Mohawk Correctional Facility in the City of Rome, Oneida County. Annexed to and made a part of the contract was a prevailing wage rate schedule setting forth the prevailing rate of wages and supplements to be paid for the workers employed on the project. Significantly, the supplemental benefits were listed item by item and provided the amount that the employer must pay its workers for each enumerated benefit.[1] Petitioner also entered into a subcontract with Northeastern Painting, Inc. for certain paint work to be done on the project. The subcontract provided, *inter alia*, that Northeastern would comply with the conditions of the prime contract, including the prevailing wage rate and supplement requirements.

In 1993, after the project had been completed, certain of Northeastern's employees filed claims with the Department of Labor for unpaid wages and/or supplements for the work performed on the project. As a consequence, the Department conducted an investigation, as the result of which it was determined that Northeastern underpaid supplements to nine employees who had worked on the project. Following a hearing, it was determined that Northeastern had willfully underpaid said employees and that petitioner was responsible for such underpayments pursuant to Labor Law § 223. Thereafter, petitioner commenced this proceeding challenging respondent's determination on the ground that, *inter alia*, the Department is preempted from collecting supplemental benefits under the Labor Law by reason of the Employee Retirement Income Security Act of 1974 (hereinafter ERISA) (29 USC § 1001 *et seq.*).

Labor Law § 220 was enacted to ensure that employees on public works projects are paid wages equivalent to the prevailing rate of similarly employed workers in the locality where

---

1. SUPPLEMENTAL BENEFITS: (per hour worked)

| | | |
|---|---|---|
| Health/Welfare | $ 1.85* 1.85 | 1.85* 1.85 |
| Pension | .88*-.-- | .88*-.-- |
| Retraining | .07*-.--- | .07*-.--- |
| Annuity | 2.00*-.-- | 2.00*-.-- |

Listed supplements apply to ALL classifications ( ) Yes ( x ) No. (*) 1st. Yr. Apprentice supplement. Starting 2nd year journeyman supps. apply 6-31.

the contract is to be performed and authorizes respondent to ascertain said prevailing wage rate, as well as the prevailing "supplements" paid in the locality (*see*, Labor Law § 220 [3]). Wage supplements include, *inter alia*, payments that are not wages, such as health, welfare, nonoccupational disability, retirement and vacation benefits (*see*, Labor Law § 220 [5] [b]). Whether respondent's enforcement of the provisions of the Labor Law governing the payment of supplements is preempted by ERISA, as claimed by petitioner, is dependent upon how such wage supplements are treated by the Department.

A State law will be considered repugnant to and therefore preempted by ERISA wherever it " 'purports to regulate, directly or indirectly, the terms and conditions of employee benefits plans' " (*Stone & Webster Eng'g Corp. v Ilsley*, 690 F2d 323, 329, quoting 29 USC § 1144 [c] [2], *affd sub nom. Arcudi v Stone & Webster Eng'g Corp.*, 463 US 1220). This is so because ERISA contemplates that private parties, not the government, control the level of benefits for retirement plans (*see, Alessi v Raybestos-Manhatten, Inc.*, 451 US 504, 511). Thus, in *General Elec. Co. v New York State Dept. of Labor* (891 F2d 25, *cert denied* 496 US 912), it was held that a "line-item" approach to establishing wage supplements, wherein the Commissioner of Labor prescribed the benefit levels for each individual type of wage supplement, was impermissible and preempted by ERISA because the Commissioner, not the contractor, determined the kind and amount of supplements to be provided. Conversely, in *Burgio & Campofelice v New York State Dept. of Labor* (107 F3d 1000), it was held that a "total package" approach to determining wage supplements would not violate the tenets of ERISA. Under the total package approach, the Commissioner determines the prevailing supplements paid in the locality, totals them and prescribes a lump sum in the schedule. The employer may then provide supplemental benefits in any form or combination, so long as the total is not less than the total of the locally prevailing benefits.

Here, it is uncontested that respondent established wage supplements by means of the "line-item" method. Nevertheless, respondent contends that the underlying enforcement proceedings do not conflict with ERISA inasmuch as the Department's investigators totaled up the amounts listed on the schedule, arrived at a lump sum of $4.80 and compared that figure to the total amount of supplements paid by Northeastern. In so doing, respondent draws a distinction between the supplement schedule and the Department's audit procedures, asserting that the "total package" enforcement

policy is in keeping with the dictates of *Burgio & Campofelice v New York State Dept. of Labor* (*supra*). We disagree.

Simply stated, Labor Law § 220 requires that employees of public work projects be paid wages equivalent to the rate of similarly employed workers in the locality. In order to "enforce" that directive, respondent is empowered to determine the prevailing wage rate and supplements paid to similarly employed workers, and such determination is part and parcel of the audit procedures utilized to determine whether the employer has complied with Labor Law § 220. Specifically, when respondent issued Prevailing Rate Schedule 8A here, he effectively directed that petitioner and any of its subcontractors provide health/welfare benefits at $1.85 per hour, pension at $0.88 per hour, retraining at $0.07 per hour and annuity at $2.00 per hour. As such, it may be presumed that petitioner and its subcontractors understood that in any instance where the cost of a supplement provided for in the employment contract did not correspond to the cost of a similar prevailing local benefit, respondent would require petitioner and its subcontractors to either match the cost of the local benefit or pay the additional cost directly to the employee.

While it appears that in early 1990, in a response to *General Elec. Co. v New York State Dept. of Labor* (*supra*), respondent adopted an interim policy establishing the new "total package" enforcement policy, there is nothing in the record to reflect that petitioner or any of its subcontractors was made aware of such policy. Indeed, it was not until late 1991 that respondent made such policy final and published rules codifying the policy, practices and procedures in this regard, which were effective February 26, 1992 (*see*, 12 NYCRR 220.2).[2] Accordingly, we hold that respondent is preempted from collecting the supplemental benefits under his promulgated schedule and, therefore, the underlying determination is annulled. In light of this conclusion, we need not address the remaining arguments advanced by petitioner.

Cardona, P. J., Mikoll, Spain and Graffeo, JJ., concur. Adjudged that the determination is annulled, without costs, and petition granted.

___

2. The pertinent time period at issue here is January 30, 1991 through May 1, 1991.