**INTERNATIONAL ENVIRONMENTAL CORPORATION, a corporation, Plaintiff,**

v.

**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, a corporation, Defendant.**

**No. CIV-74-140-E.**

United States District Court, W. D. Oklahoma.

July 16, 1975.

**254**

John W. Swinford, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for plaintiff.

Arnold D. Fagin, of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl., for defendant.

MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

Plaintiff brings this action to recover damages incurred by defendant's breach of an alleged requirements contract. It is undisputed that defendant has placed no purchase order with plaintiff. The source of the conflict between the parties is in the following language of their agreement:

"1. *Purchase*—ITT agrees to purchase from seller and seller agrees to sell to ITT, as ITT *may order from time to time,* the air handling and fan coil products described below." [Emphasis supplied by the Court.]

Defendant moves for summary judgment on the ground that it is a well-settled rule that a contract containing only the promise to purchase such items as the buyer "may order from time to time" either fails for lack of mutuality or at

least fails to constitute a requirements contract.

In response, plaintiff argues that the words "may order from time to time" can be understood only in the context of the entire agreement, and the matter to which it relates and the circumstances surrounding its negotiation. In reply, defendant contends that to understand these six words by reading them in the context of the entire agreement is to realize that the remaining provisions were to be without application unless and until an order was placed. With reference to plaintiff's wish to introduce parol evidence of promises made during the course of negotiations, defendant replies that by express provision, the written contract is the sole receptacle of the parties' agreement.

"21. APPLICABLE LAW—The parties agree that this Agreement shall be construed, interpreted and enforced by the laws of the State of Oklahoma and that no course of prior dealing or usage of trade shall be applicable to the construction and interpretation of this Agreement.

"22. ENTIRE AGREEMENT— This Agreement shall solely control the terms of purchase and sale of the products hereunder and any contrary, different, or additional terms in any purchase order, sales acknowledgment, or other documentation of either party shall have no effect and this Agreement shall override any such documentation. Except as provided above, this Agreement may not be changed or modified except by a writing signed by both parties."

■■ In reaching its determination herein, the Court is mindful of the stricture that summary judgment shall not issue unless there are no disputed material facts and the movant is entitled to judgment as a matter of law. The Court is guided, too, by the rule that it cannot make a better contract for a party than the agreement the party made. That rule may be harsh in operation,

but has special applicability here, inasmuch as the agreement was the culmination of months of negotiations.

 It is clear that nowhere in the contract is the word "requirements" used.[1] It is equally clear that the words "may order from time to time," standing alone, are not a promise by the defendant to purchase anything from the plaintiff, much less its requirements. IA *Corbin on Contracts* § 157; 2 *Williston on Sales* § 464a. Those two facts are significant, but not decisive. In Mr. Justice (then Judge, Court of Appeals of New York) Cardozo's words:

> "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917).

The agreement at issue herein is detailed and thorough, touching every base, including specifications of lead times, express warranties, termination rights, and indemnity provisions. At first blush, the whole writing appears to be instinct with obligation. However, after close reading, the Court concludes that it is the first paragraph, "Purchase," which controls the issue of whether an obligation to buy was created, and all of the remaining terms of the contract were to become operative only when, if ever, defendant made any purchases.

 "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions." *Major v. Bishop*, 462 F.2d 1277, 1279 (10th Cir. 1972). Reading the disputed words in the context of the whole agreement, it cannot be said they are susceptible of a requirements contract construction. The question then becomes whether the Court may be persuaded otherwise by the circumstances surrounding the negotiations. By the express provisions previously quoted, the contract incorporates the fundamental principle that the final written expression of agreement may not be contradicted by evidence of contemporaneous oral promises.

Nor is this a case where the Court could look to the parties' dealings under their contract as indicative of their own practical construction of its terms. There has been no course of dealings under this contract.

 It is incumbent upon the Court to give effect to the intent of these parties. Undoubtedly, plaintiff intended to enter a more beneficial contract than the one which is the subject of this action. But where the meaning of the language is clear, the intent to which the Court must give effect is that expressed by the language, and "consideration may not be given to the statements of either party as to their subjective intent in making the written contract." *First National Bank in Dallas v. Rozelle*, 493 F.2d 1196, 1201 (10th Cir. 1974). Accordingly,

It is ordered, That defendant's motion for summary judgment be and the same hereby is granted. Counsel for the defendant will prepare the appropriate judgment.

---

1. The word "required" is used only once in the sense at issue here.

"2. *Products*

 \* \* \* \* \*

"(b) Fan coil products . . . as currently manufactured by Seller and described generally in Seller's catalog . . . such fan coil products as may be added to the catalog from time to time and such fan coil products *as may be required* by ITT from time to time that can be manufactured by Seller." [Emphasis supplied by the Court.]