## IRON WORKERS MID–SOUTH PENSION FUND

v.

## Alice Jo STOLL, Julia F. Short, Sherry Collins and Krystle Short Neal.

### Civ. A. No. 91–0513.

United States District Court, E.D. Louisiana.

Aug. 28, 1991.

---

Marie Healey, Jeanne Theresa Cresson, Sarah Hall Voigt, Sean Renee Dawson and Maria C. Cangemi, Marie Healey & Associates, APLC, New Orleans, La., for Iron Workers Mid–South Pension Fund.

Rhett Wilburn and Ray Wilburn, Wilburn, Masterson & Smiling, Tulsa, Okl., for Alice Jo Stoll.

William J. Oberhelman, Jr., New Orleans, La., Randall G. Vaughan and Rita J. Gould, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., for Julia F. Short.

John R. Carle, Carle, Higgins, Mosier & Taylor, Claremore, Okl., for Sherry Collins and Lois Dotson.

Bill E. Ladd, Tulsa, Okl., for Linda Smith.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on MOTION FOR SUMMARY JUDGMENT filed on behalf of the plaintiff, IRON WORKERS MID–SOUTH PENSION FUND ["Fund"], seeking a declaration as a matter of law determining the proper recipient(s) to the Death Benefit due under the terms of the PLAN. The matter was set for oral hearing on August 21st, 1991, but was submitted on the briefs.

### I. PROCEDURAL BACKGROUND.

Plaintiff Fund bought this declaratory judgment action to determine entitlement to benefits under the terms of the Iron Workers Mid–South Pension Plan and under § 502(a)(1)(B) and (a)(3)(B) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3)(B). Pursuant to Title 28, United States Code, Section 2201, plaintiff seeks a declaration from this Court determining the proper party(ies) to whom the death benefit is payable as a

result of the death of Plan participant, Jim Freeland Short.

Claimant, Julia F. Short, Jim Short's ex-wife, filed a response to Plaintiff's Motion for Summary Judgment requesting the Court to enter summary judgment to the effect that claimant Alice Jo Stoll [Mr. Short's alleged common law wife] is not the "qualified spouse" within the meaning of the Plan and that as named beneficiary she should be awarded benefits. Both Sherry Collins and Krystal Neal [Mr. Short's daughters] filed a Joint Response admitting there are no genuine issues of material fact and that the Court grant summary judgment declaring that Collins as personal representative of the decedent's estate should receive death benefits under the Plan.

Finally, claimant Alice Jo Stoll has responded, urging summary judgment declaring Julie Short not be considered that designated beneficiary, and rather recognizing her right, as common law wife of Mr. Short at the time of his death, to benefits payable under the plan.

## II. FACTUAL BACKGROUND.

Mr. Short died on December 9, 1989, while a resident of Oklahoma, and was survived by his two daughter's, Sherry Collins[1] ["Collins"] and Krystal Short Neal ["Neal"], his alleged common law spouse, Alice Jo Stoll ["Stoll"] and ex-wife, Julia F. Short ["J. Short"]. All of the aforementioned claimants are citizens and residents of the State of Oklahoma.

The basis of Stoll's claim for death benefits stem from her allegations to the effect that she was his common law wife. Both daughters, Collins and Neal, claim entitlement to the Plans § 3.13 Lump Sum Death Benefit. Collins claims both in her capacity as the representative of Jim Short's estate and as heir at law. J. Short, the deceased's ex-wife, has asserted a claim against the Fund, as the Designated Beneficiary of Jim Short, for payment of the Plan's § 3.13 Lump Sum Death Benefit.

Mr. Short was prior to his death a participant in the Iron Workers Mid–South Pension Fund, which provides retirement benefits for employees of iron worker employers who are signatory to collective bargaining agreements with the Fund's sponsoring Unions. At the time of his death, he was living with Stoll in Oklahoma, and had accumulated 7 years of Past Service Credit and 19–5/10ths years of Future Service Credit in the Fund at issue. He had not yet retired at the time of his death, but was fully vested with his retirement benefit, in accordance with the Plans provisions.

Section 5.03(d) of the Plan [Plaintiff's Exh. "A"] provides that the decedent's pre-retirement surviving "qualified spouse", if any, is eligible to elect the greater of the following optional death benefits, to wit: (1) A Lump Sum Surviving Benefit [i.e. the Actuarial Present Value of the Surviving Spouse Pension alternatively payable under subsection (i) of the Plan; or (2) A Lump Sum Death Benefit payable under Article 3 of the Plan.

Sections 5.01(c) and (d)(3), and § 5.03(b) of the plan define "qualified spouse" to include: a participant's spouse [i.e. a person to whom a Participant is considered married under the applicable law] and a Participant's former spouse, if and to the extent provided in a Qualified Domestic Relations Order ["QDRO"]. In said sections aforementioned the plan further defines term "qualified spouse" to include a spouse who was married to a Participant on the date of Participant's death and having been so married for at least one year ending with the date of death.

## III. THE LAW.

### A. *Qualified Spouse.*

■ It is undisputed that Ms. Stoll has not sought to have her status as Mr. Short's alleged common law spouse established by the Oklahoma courts. In any event, in ERISA claims, the claimant has the burden of proving entitlement to the benefits and that the denial of benefits by

---

1. Collins has been named as the Personal Representative of Jim Short's estate.

the Trustees is arbitrary and capricious.[2] Moreover, there is no "clear and convincing" proof of a contract of common law marriage as between Stoll and Mr. Short prior to his decease, as required under Oklahoma law.[3]

Stoll previously has denied the existence of her alleged common law marriage relationship with Mr. Short in a formal document.[4] From the day Stoll moved into Mr. Short's residence until the day he died she paid rent. Stoll never used Mr. Short's name until after he died. Mr. Short's sister Linda handled all of his hospitalization arrangements and bills, as well as the funeral arrangements upon his death.

Stoll bears the burden of proof on this dispositive issue of her "marital status" and the burden is indeed a heavy one, "clear and convincing proof." Stoll, on the contrary, has made no showing whatsoever of a general reputation both among relatives and acquaintances of their marriage. Linda Smith, Jim Short's sister, was originally appointed administratrix of his estate, not Stoll, who if qualified as his spouse under Oklahoma law would have been appointed administratrix.

### B. *Waiver.*

█ In any event, Stoll and the representative of Mr. Short's estate, jointly executed a Compromise Release waiving all rights as the alleged common-law wife of Jim Short, to wit:

Alice Jo Stoll hereby withdraws all her claims to any real or personal property of the Estate of Jim Freeland Short, save and except those items set out herein.

Alice Jo Stoll waives any and all claims she may have in the past and future as the alleged common law wife of Jim Freeland Short.

That in consideration for giving up any and all claim she may have had against said estate Alice Jo Stoll is to receive those items of personal property listed on an Exhibit submitted to and approved by the Court on the 23rd day of July, 1990. [Short Exh. "I"][5]

It is hard to imagine language more indicative or probative of an intent to relinquish the rights at issue in the instant case.

The specific holding of the Seventh Circuit in *Fox Valley and Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275, 280 (7th Cir.1990)[6]. In *Fox Valley,* the Court considered the effect of a spouse's waiver of interest in the former spouses ERISA qualified pension benefits in regard to ERISA's anti-alienation clause. Following the participant's death, his former spouse claimed a death benefit under the plan. The Court concluded that the "Qualified Domestic Relations Order" [QDRO] procedure does not apply where a non-plan participant waives an interest in a benefit plan.

In *Stobnicki v. Textron, Inc.,* 868 F.2d 1460 (5th Cir.1989), the Fifth Circuit held the anti-alienation provisions of ERISA and the Internal Revenue Code did not preclude a pension plan beneficiary, who was both the common law wife and the designated beneficiary, from assigning her benefits as part of a final legal settlement of a dispute. The *Stobnicki* court based its decision on the general purpose of the anti-alienation provisions of ERISA, that is so that "Amer-

**2.** Sections 404 and 502 ERISA, 29 U.S.C. §§ 1104 and 1132.

**3.** *In the Matter of the Estate of Henry J. Phifer,* 629 P.2d 808 (Okl.App.1981); and *In the Matter of the Estate of Glen C. Stinchcomb,* 674 P.2d 26, 28, and 29 (Okl.1983).

**4.** See, Compromise Release, Short's Exhibit "I", wherein it is agreed that she was not the common law wife of Jim Short.

**5.** The document is not ambiguous, and, therefore, must be applied according to the plain and simple meaning of the words. *International Environmental Corporation v. International Tel.*

*& Tel. Corp.,* 397 F.Supp. 253 (D.C.Okla.1975); *Devine v. Ladd Petroleum Corp.,* 743 F.2d 745, 748 (10th Cir.1984) [Under Oklahoma law, the interpretation of an unambiguous contract is a question of law for the court.].

**6.** But see, *Lymen Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989) [wherein the Eighth Circuit held that the former spouse was entitled to benefits as the primary beneficiary, because the former spouse's alleged waiver of benefits in the divorce decree was not *knowing and voluntary,* and therefore without effect.]

ican workers may look forward with anticipation to retirement with financial security and dignity." *Id.* at 1464. The Court resolved *not* to blindly follow the edict of the alienation provision, which would have resulted in unjust and unintended consequences.

 While this Court is of the opinion that Stoll is not the "qualified spouse" of Mr. Short, even if that were so, she validly waived her right to receive any death benefits she may have been entitled by executing the Compromise Release. Stoll neither being a participant, the judicially recognized common-law wife of the participant, nor the designated beneficiary cannot reap unjustly the benefits of the anti-alienation provisions.[7] The Fifth Circuit's decision in *Stobnicki* controls the disposition of this issue. As the court concluded in *Stobnicki*, the

> [S]tatutory bar against alienation of pension benefits must yield to reason and to the purposes for which the Act was written ... it should not override the law's settled preference for settlement and composition of differences where that is possible, rather than litigation of them to the bitter end.

*Id.* at 1465.

Having decided that "qualified spouse" or not, Stoll waived[8] any right she had to death benefits under the Plan, the Court turns its attention to the arguments as to whether the participant's ex-wife, Julia

Short, or his two daughters, the legal heirs are entitled to benefits.

### C. Designated Beneficiary vs. Legal Heirs.

 There is no doubt, that Mr. Short's designation of Julia F. Short as his beneficiary of the Mid–South Iron Workers Welfare Fund on June 25, 1985, and his failure to revoke that designation, operates as a valid designation of Julia Short to his pension plan death benefit, pursuant to § 3.14 thereof.

Decedent's daughters, Collins and Neal, argue that Oklahoma Statutes nullify the designation aforementioned.[9]

The law is well settled that such statutes "relate to" the plan and are therefore "preempted".[10] In *MacLean v. Ford Motor Company*, 831 F.2d 723 (7th Cir.1987) the court held ERISA preempted an Indiana statute governing testamentary transfers. The precise issue before the court in *MacLean* was whether the Savings and Stock Investment Plan assets should be distributed to the designated beneficiary of his life insurance policy as was provided by the Plan. The court stated succinctly:

> 'Clearly, a state law which would change a beneficiary designated by the terms of an employee benefit plan is a law relating to the plan and as such would be superseded by ERISA.' *Id.* at 725.

---

**7.** Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), provides that a pension plan must prohibit the alienation or assignment of benefits and the Iron Worker's Mid–South Pension Plan at issue in the case at bar at Section 5.02(e)(iv)(B), does contain such provision prohibiting the alienation of benefits.

**8.** Under Oklahoma law a waiver is defined as the intentional relinquishment of a known right or conduct which warrants an inference of such intent. *Prudential Fire Ins. Co. v. Trave–Taylor Co.*, 194 Okl. 394, 152 P.2d 273 (1944); *Crowell v. Thoreau Center, Partnership*, 631 P.2d 751 (Okl.1981).

**9.** 15 Okl.St.Ann. § 178 [to the effect that death benefits contract for spouse is revoked if the party with the power to designate beneficiaries dies after being divorced from the beneficiary named to receive such benefits]; 12 Okl.St.Ann. § 1279 and 43 Okl.St.Ann. § 122 [regarding the

effect of divorce as a bar to any claim of either party in or to the property of the other]; 84 Okl.St.Ann. § 114 [to the effect that a divorce invalidates or revokes provisions of a will in favor of testator's spouse].

**10.** The Court here particularly heeds the Supreme Court admonitions in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) to give the term "relates to" the broadest possible reasonable interpretation. See also, *E–Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103 (5th Cir.1991) wherein it is stated:

> Reflective of the broad reach of the statute, the Supreme Court has found preemption of state laws which only collaterally or indirectly affected employee benefit plans. *Alessi v. Raybestos–Manhattan, Inc.* [451 U.S. 504], 101 S.Ct. 1895 [68 L.Ed.2d 402] (1981).

In the case at bar, the Oklahoma statutes cited at note 6, supra, prevent a benefit from being paid to a Julia Short, a person recognized under the Plaintiff's plan as a validly designated beneficiary. Accordingly, these statutes [11] which decedent's legal heirs seek to impose upon the ERISA plan, clearly relate to the plan within the meaning of § 514(a), and therefore ERISA in any event preempts Oklahoma statutes which purport to nullify an ex-spouses right to receive a death benefit, since those statutes are in direct conflict with § 205 of ERISA, 29 U.S.C. § 1055(e)(1)(B).

The plan provides in Article 3, § 3.14 as follows:

> In the event no Beneficiary designation is on file with this Fund, the Trustees *will accept* in lieu thereof a designation of Beneficiary on file with the Iron Workers Local 58 Health & Welfare Fund, the Mid–South Health & Welfare Fund or the Iron Workers Welfare Fund. [emphasis supplied].

■ Decedent's daughters argue the phrase "will accept" is somewhat vague in meaning and should be interpreted so as to give the Trustee the option of accepting a valid designation on file with one of the iron worker welfare funds. However, as pointed out in supplemental brief on behalf of the Plan, the Board of Trustees who drafted the language at issue have never interpreted it in such a fashion nor was it their intent that the language be so interpreted. Moreover, the fiduciary's interpretation of the language in the plan, which fiduciary has clearly been given full discretionary authority to determine and construe all terms of the Plan,[12] must be given deference and its interpretation subject to the "arbitrary and capricious" standard of review.[13]

■ Considering that it is conceded that the word "will" most often is construed as mandatory in nature [14] as are the words "shall" and "must", it cannot be seriously argued that the Trustee's interpretation in that vein is "arbitrary and capricious."

Finally, any perceived confusion regarding whether the "Mid–South Health & Welfare Fund" and "Mid–South Iron Workers Welfare Fund" are one and the same entity was more than adequately addressed in the Plan's supplemental brief filed with this Court.[15] Moreover, both of the above cited entities are patently one and the same as "Iron Workers Mid–South Pension Fund Plan".[16] There should be no confusion whatsoever, that the words "Plan" and "Fund" are synonymous, and clearly, in this regard defendants are mincing words. Accordingly, and considering the absence of disputed issues of *material* fact, the submissions of the parties, and the applicable law,

IT IS ORDERED that plaintiff's Motion for Summary Judgment is hereby GRANTED declaring that defendant JULIA SHORT [the designated beneficiary] is the proper party to whom plaintiff IRON WORKERS MID–SOUTH PENSION FUND should distribute death benefits payable as a result of the death of Jim F. Short.

---

**11.** *Id.*

**12.** See, Article IV, § 4.2, wherein it is stated that "the Trustees ... shall also have full power to interpret and construe the provisions of this Agreement and Declaration of Trust and the Plan of benefits...."

**13.** *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989).

**14.** See, Defendants Collins and Neil's Brief, at p. 4.

**15.** By way of supplemental brief, the Plan explained that the abbreviation of the full name of

Mid–South Iron Workers Welfare Fund to "Mid–South Health & Welfare Fund" is commonly used both by Participants and by its Board of Trustees and the designations are used interchangeably. See, Plaintiff's Supplemental Brief, at p. 4.

**16.** See, Affadavit of W.H. Noble, at para. 2 [Plaintiff's Supplemental Exhibit] which refers to the Iron Workers Mid–South Pension Fund Plan document and quoting said Plan which refers to itself as "this Fund." Obviously the terms "Plan" and "Fund" were intended to be used interchangeably, since the Plan itself in the instant case characterizes itself as "this Fund" in section 3.14 of Article 3 dealing with the designation of beneficiaries.

The Clerk of Court is directed to enter judgment in accordance with the foregoing.